UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-05-82-B-W |
| | ) | |
| RICHARD E. HURD, JR. | ) | |

### ORDER ON DEFENDANT'S MOTION FOR RECUSAL

Although there has been an allegation that Richard E. Hurd, Jr. threatened to kill this Judge, the Court denies Mr. Hurd's amended motion for recusal, because the Court concludes that either his threats, if made, are not sufficiently serious to justify recusal or were an attempt to manipulate the assignment of judges to his case.

### I.     STATEMENT OF FACTS

On October 13, 2005, a federal grand jury issued a one-count indictment against Mr. Hurd for possession of ammunition by a felon. *Indictment* (Docket # 1). Mr. Hurd pleaded guilty on January 24, 2006, and after a Presentence Report was prepared, sentencing was scheduled for June 16, 2006 and again for July 13, 2006. Sentencing was further delayed by Mr. Hurd's request for a new attorney.[1] *Mot. to Withdraw as Attorney* (Docket # 50). After the Court granted his request and appointed a new attorney to represent him, an additional delay

---

[1] Mr. Hurd has been represented in this matter by four different lawyers. The first lawyer – Charles Hodsdon – filed a motion to withdraw on November 18, 2005, because Mr. Hurd had "expressed his displeasure with Counsel's representation." *Mot. to Withdraw* (Docket # 15). The Court granted this motion and appointed new counsel on November 23, 2005. *Order* (Docket # 21). The second lawyer – Terence Harrigan – filed a motion to withdraw on July 13, 2006, because Mr. Hurd had "become dissatisfied with his counsel and . . . retained Attorney Jeffrey Silverstein to represent him." *Mot. to Withdraw* (Docket # 50). After entering his appearance on August 10, 2006, Mr. Silverstein initially moved to withdraw on December 6, 2006, because he was unable to "communicate with the Defendant in a way that will foster productive collaboration regarding pending sentencing issues." *Mot. to Withdraw* (Docket # 84). Upon hearing, however, Mr. Hurd agreed to continue with his Mr. Silverstein, but as he did not then have the funds to pay him, on December 15, 2006, the Court appointed Mr. Silverstein to represent Mr. Hurd. On January 31, 2007, Mr. Silverstein filed a motion to withdraw, because he represented both defendants who were purported to have been involved in the incident that gives rise to the motion to recuse. *Mot. to Withdraw* (Docket # 91). On January 31, 2007, the Court appointed Wayne Foote, Mr. Hurd's fourth lawyer.

ensued because the new counsel needed to familiarize himself with the case. After some additional delay, on January 31, 2007, Mr. Hurd's then attorney, Jeffrey Silverstein, moved to withdraw as Mr. Hurd's attorney. *Mot. to Withdraw* (Docket # 91). The Court granted the motion and appointed Mr. Hurd's current counsel. *Order* (Docket # 92).

On April 18, 2007, Mr. Hurd moved for this Judge to recuse himself. *Am. Mot. to Recuse* (Docket # 99). The motion states that "defendant is informed that there are allegations that he made threats against Judge Woodcock's life, and further that these allegations have been conveyed to Judge Woodcock by the United States Marshal[] Service." *Id.* The Government responded by taking no position, but confirmed that it had undertaken an investigation of the alleged threat, but declined prosecution based upon insufficient evidence. *Gov't Resp. to Def.'s Am. Mot. to Recuse* (Docket # 102) (*Gov't Resp.*).

## II.  DISCUSSION

A judge is statutorily required to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Although an allegation that a defendant may have threatened a judge is not a ground for mandatory recusal under 28 U.S.C. § 455(b), the test for permissive recusal under subsection (a) is not subjective, but objective. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 n.8 (1988). The statute "seeks to balance two competing policy considerations: first, that courts must not only be, but seem to be, free of bias or prejudice; and, second, the fear that recusal on demand would provide litigants with a veto against unwanted judges." *In re Boston's Children First*, 244 F.3d 164, 167 (1st Cir. 2001) (internal punctuation and citations omitted). To satisfy the § 455(a) standard for recusal, a judge "does not have to be *subjectively* biased or prejudiced, so long as he *appears* to be so." *Liteky v. United States*, 510 U.S. 540, 553 n.2 (1994) (emphasis in original). However, a judge

"has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995). Congress has stated that its standards "should not be used by judges to avoid sitting on difficult or controversial cases." H.R. Rep. No. 93-1453, at 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355; *El Fenix de Puerto Rico v. The M/Y Johanny*, 36 F.3d 136, 141 (1st Cir. 1994) ("The restricted mandate to disqualify is calculated to induce a judge to tread the narrow path between timidity and tenacity.").

Generally, threats or other attempts to intimidate the judge are not appropriate grounds for recusal. *United States v. Hairston*, 38 Fed. Appx. 884, 886 (4th Cir. 2002); *United States v. Yu-Leung*, 51 F.3d 1116, 1119 (2d Cir. 1995); *United States v. Cooley*, 1 F.3d 985, 994 (10th Cir. 1993); *United States v. Malmsberry*, 222 F. Supp. 2d 1345, 1350 (D. Fla. 2002). If the defendant has actually taken steps to carry out his threat or the judge has been directly affected by the defendant's alleged crime, section 455(a) may dictate recusal. *See United States v. Greenspan*, 26 F.3d 1001, 1005-06 (10th Cir. 1994) (holding that recusal was appropriate where a conspiracy to kill the judge spanned several states and included a number of persons who had allegedly contributed large sums of money for the hiring of a hit man); *United States v. Cerrella*, 529 F. Supp. 1373 (D. Fla. 1982) (district judge recused himself when informed by law enforcement that the defendant had not only expressed the intention to murder him, but had placed a contract with hit men to carry out his intention); *Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995) (holding that a judge whose chambers were damaged by Timothy McVeigh's bombing of the Murrah Federal Building in Oklahoma City must recuse himself from the trial of Terry Nichols).

Here, the Presentence Report (PSR) states that one inmate overheard Mr. Hurd discussing threats against this Judge with another inmate.[2]  *PSR* at 6.  The first part of the conversation between Mr. Hurd and the other inmate allegedly addressed the possibility that during a court proceeding, they could rush the bench, get by the bailiff, and murder the Judge.  *Id.*  The second part of the conversation allegedly addressed the possibility of killing the Judge after serving their prison terms.  *Id.*  The Government's motion confirms that, upon investigation, it declined prosecution of Mr. Hurd for the alleged threat due to insufficient evidence.  *Gov't Resp.* at 1.  In view of the results of the Government's investigation and the context of the alleged conversation, the Court concludes that if the conversation occurred, Mr. Hurd's threats, though ill-considered, are not sufficiently serious to justify recusal.[3]  On the other hand, in light of his response to the Court's decision to detain him for failure to appear at one sentencing hearing and appearing late at the next, it may be that the alleged threat was an attempt to obtain a "random veto over the assignment of judges."  *United States v. Giorgi*, 840 F.2d 1022, 1034 (1st Cir. 1988).  Either way, the alleged threat does not provide a proper basis for recusal.

Further, the guideline range for imprisonment may well be unaffected by the threats, if made.[4]  The PSR notes that after the Court revoked Mr. Hurd's bail for failure to appear at his

---

[2] The Court relates the contents of the PSR without making any findings as to what actually happened.  Mr. Hurd's motion is based only on his understanding that there were allegations he made threats and that the allegations were conveyed to this Judge.  At sentencing, Mr. Hurd will be given an opportunity to dispute any of the facts in the PSR.  If he does not acknowledge that he made the statements, the Government may or may not elect to attempt to prove he did so or Mr. Hurd may wish to present evidence that he did not do so.  The Court has not drawn any conclusions as to what, if anything, happened based on the contents of the PSR alone.  For purposes of its evaluation of the merits of this motion, the Court has assumed Mr. Hurd made the statements.

[3] To be clear, every threat against those involved in the judicial system must be considered seriously.  The question here is whether a threat, even though treated seriously, is sufficient to justify recusal; in the circumstances of this case, the Court concludes it is not.

[4] The Court recognizes that the guideline range is advisory and Mr. Hurd is free to argue under 18 U.S.C. § 3553(a) for a statutory sentence outside the range.  *See United States v. Booker*, 543 U.S. 220, 259 (2005); *United States v. Jimenez-Beltre*, 440 F.3d 514 (1st Cir. 2006).  In assessing the statutory factors, the Court is, nevertheless, required to "take account" of the United States Sentencing Commission Guidelines and the policies under the Guidelines.  *Booker*, 543 U.S. at 259 ("[T]he Act nonetheless requires judges to take account of the Guidelines together with

sentencing and failure to appear on time at a rescheduled sentencing, Mr. Hurd stated to the effect: "If I had known I was going to jail today, I wouldn't have shown up at all." *PSR* at 5. The PSR also states that on January 2, 2007, after pleading guilty, the defendant assaulted an inmate at the Piscataquis County Jail, punching him three times and breaking his nose. *Id.* at 6. This assault led to Mr. Hurd's transfer to another detention facility. *Id.* Because of these events, as well as the alleged threat, the Probation Office has recommended against acceptance.

Whether Mr. Hurd sustains his burden for a reduction under U.S.S.G. § 3E1.1 at the sentencing hearing remains to be seen. However, a denial of acceptance based on subsequent criminal conduct would be consistent with First Circuit case law and with the Court's rulings in similar cases. *See United States v. Robinson*, 433 F.3d 31, 37-38 (1st Cir. 2005); *United States v. Burdi*, 414 F.3d 216, 220-21 (1st Cir. 2005); *United States v. McLaughlin*, 378 F.3d 35, 38 (1st Cir. 2004) ("It follows that when a defendant commits new offenses after having been charged and those offenses reflect adversely on the sincerity of the defendant's avowed contrition, the sentencing court may treat the commission of those offenses as an indication that the defendant has not accepted responsibility for the original crime.").

## III.    CONCLUSION

The Court DENIES the Defendant's Amended Motion for Recusal (Docket # 99).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 9th day of May, 2007

---

other sentencing goals."); *Jimenez-Beltre*, 440 F.3d at 518 (stating that the Guidelines continue to be "an important consideration" in sentencing); 18 U.S.C. § 3553(a)(4).